**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 8, 2008[*]
Decided October 24, 2008

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-2945

| | |
|---|---|
| ROBERT W. ALLEN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 04-12-CJP |
| | |
| SCOTT WINE, et al., | Clifford J. Proud, |
| *Defendants-Appellees.* | *Magistrate Judge*. |

**O R D E R**

In this action under 42 U.S.C. § 1983, Illinois inmate Robert Allen claimed that Chad Todaro, a prison guard, engaged in retaliatory conduct after Allen had complained about Todaro's harassing comments. Allen also claimed that two other guards should have

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

intervened to stop the retaliation, and that two more denied him due process when they presided over a disciplinary hearing on a trumped-up charge brought by Todaro. A magistrate judge, presiding by consent, granted summary judgment for all of the defendants except Todaro, and a jury found in Todaro's favor after trial. On appeal Allen raises a number of issues, none of which have merit.

## I.

The following account is taken from Allen's complaint. Allen was an inmate at the Menard Correctional Center during the period relevant to this case. In January 1999, Todaro began harassing Allen after he refused to participate in "homosexual games." Allen's complaint characterizes the harassment as "sexual," but does not further describe Todaro's conduct except to say that he made comments and gestures. Another guard, who is not a defendant, observed and reported Todaro's misconduct, and as a consequence Todaro was reassigned to another cell house. When Allen encountered Todaro intermittently thereafter, Todaro harassed and threatened him in retaliation for causing the transfer.

In 2003 Allen was assigned to the same cell house as Todaro. After that, Allen alleged, Todaro began harassing him, and threatened to have him sent to segregation. Allen purportedly submitted several grievances to prison authorities, which prompted Todaro to retaliate with two fabricated disciplinary reports against Allen. According to his complaint, Allen informed Major Scott Wine and Sergeant James Kloth about Todaro's retaliatory harassment. Wine told Allen that he would not have any problems with Todaro, and Kloth said he would tell Todaro to leave Allen alone, but neither intervened. Allen had a hearing before Lieutenant Craig Mitchell and Correctional Officer Mihn Scott to address one of Todaro's disciplinary reports, and at the hearing Mitchell allegedly told Allen that he was going to send Allen to segregation for causing problems for his friend Todaro. Although Allen had submitted the names of his witnesses beforehand, Mitchell and Scott refused to call them and wrote in their hearing report that Allen had not requested any witnesses. Allen was sentenced to disciplinary segregation for two months, lost commissary privileges for two months, and was assigned a lower grade status for two months.

In January 2004 Allen sued Todaro, Wine, Kloth, Mitchell, and Scott. At screening, *see* 28 U.S.C. § 1915A, the district court permitted Allen to proceed with his claims that (1) Todaro had harassed him and filed two false disciplinary reports in retaliation for his grievances against Todaro, (2) Wine and Kloth knew about but failed to stop Todaro's retaliation, and (3) Mitchell and Scott denied Allen due process at the disciplinary hearing

over which they presided.  The record shows that all parties properly consented for a magistrate judge to preside over the lawsuit.

In April 2007, Allen moved for the appointment of counsel.[1]  He argued that he does not read well, that the litigation involved important constitutional issues, and that only an attorney could obtain the necessary evidence given the Attorney General's purported policy of hampering discovery requests by prisoners.  The court denied Allen's request with the explanation that Allen had not shown that he made reasonable attempts to retain counsel or that he was precluded from doing so.  The court added that Allen's claims were not unusually complex, and that thus far his submissions had been "articulate, fully supported by legal citation and effective."

Later, after the defendants had moved for summary judgment and were awaiting a ruling, Allen sought leave to amend his complaint.  Allen wanted to abandon his request for injunctive relief and clarify that he was proceeding against the defendants in their individual capacity only.  He also wished to change the total amount of damages he sought from each defendant and specify amounts for compensatory, punitive, and psychological damages.  The court denied Allen's motion, noting that it was filed shortly before trial and over three years after the original complaint.  The court explained that all of Allen's proposed changes were unnecessary.  It was plain that Allen was proceeding against the defendants individually, and the new amounts of damages he proposed were well within the original amounts he sought.  Allen filed an objection asking the district court to review this order.

The magistrate judge then granted summary judgment for Wine and Kloth on the ground that they were not personally involved in Todaro's alleged misconduct and had no opportunity to intervene.  The court also granted summary judgment for Mitchell and Scott, reasoning that they could not have deprived Allen of due process because he did not have a protected liberty interest at the hearing.  The court declined, however, to grant summary judgment for Todaro because issues of material fact remained.

Again, Allen complained to the district court about the magistrate judge's ruling.  Allen generally contended that his claims against Wine, Kloth, Mitchell, and Scott should proceed to trial, and he also argued that the court had misread his complaint and overlooked a fourth claim not mentioned in the district court's screening order.  According

---

[1] Although Allen titled the motion a "Renewed Application for Appointment of Counsel," the record does not reflect any previous motion requesting counsel.

to Allen, his complaint also alleged that in 1999 he was assaulted by Todaro, who groped his penis and buttocks. Allen asked the district court to overrule the magistrate judge's grant of summary judgment, and to acknowledge this additional Eighth Amendment claim against Todaro. It is not clear whether the magistrate judge or district judge ever received either this objection or Allen's objection to the denial of leave to amend his complaint. Indeed, when Allen later filed a motion to continue the trial until the chief judge of the district court ruled on these objections, the magistrate judge issued an order explaining that there were no motions pending challenging those rulings, and that because the parties consented to trial before the magistrate judge, an appeal to the chief judge was not available. Allen filed nothing further concerning either objection.

At the final pretrial conference, Allen renewed his motion for appointment of counsel. In denying the motion for the second time, the court acknowledged Allen's limited education, but noted that during a recent colloquy with the court he had articulately communicated his claims and his legal arguments. The court concluded that appointed counsel would not make a difference in the outcome of the case.

Allen then filed a third motion for appointment of counsel. Once more he asserted that he did not read well and thus depended on jailhouse lawyers for assistance. He also contended that he required counsel to assist with cross-examination. The magistrate judge again denied his motion. The court explained that it already had addressed the issue of counsel and that Allen had not presented any new reasons that would warrant granting the motion.

Allen responded by filing a "Formal Complaint Alleging Misconduct to Thwart the Fair Administration of Justice." In his submission, which requested review by the district court, Allen alleged that the magistrate judge was biased. Allen complained about various adverse rulings but principally was upset that the judge had not ordered defense counsel to provide him a free copy of his deposition transcript instead of just making the deposition available for Allen to review under supervision. Allen also complained that the judge had "accused plaintiff of being before him in the past." The magistrate judge denied the motion, explaining that the district judge no longer was involved in the proceedings and that Allen could raise his arguments in an appeal after trial.

The case proceeded to trial against Todaro. The minute order for the trial reflects that on the first day six inmate-witnesses testified for Allen via video-conference. On the second day, however, the magistrate judge dispensed with the testimony of two other inmates because there were technical difficulties with the video-conference equipment at the prison where they were housed and the judge believed their testimony would be

cumulative. At the conclusion of the trial, the court instructed the jury to give the testimony of witnesses who testified via video the same consideration as those who were present. The judge refused to give an instruction on compensatory damages, over Allen's objection. The judge instead told the jury that compensatory damages were not available, but added that the jury was required to award nominal damages if it found for Allen and would then have the option of awarding punitive damages. The jury found for Todaro.

Allen appealed. Both the district court and this court denied his motion for appointment of appellate counsel. Allen filed a "Pracipe" addressed to the clerk of the district court asking that the trial transcript be designated as part of the record on appeal along with other materials. Allen, though, apparently made no effort to order the transcript from the court reporter, and neither is there any indication in the record that he asked the magistrate judge for assistance in obtaining it. Allen has not asked this court to order the preparation of a trial transcript.

## II.

On appeal Allen first argues that he never consented to proceed before the magistrate judge. Because this contention, if true, would implicate the finality of the judgment before us, we address it first. *See Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1013 n.7 (7th Cir. 2000). A magistrate judge may conduct all proceedings in a civil case and enter final judgment if the parties consent. 28 U.S.C. § 636(c)(1); *see Rice*, 209 F.3d at 1013 n.7. A signed consent form is sufficient proof of consent, *see Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059-60 (7th Cir. 2000); *Lovelace v. Dall*, 820 F.2d 223, 225-26 (7th Cir. 1987) (per curiam), and in this case there are written, signed consents from all parties. Allen asserts in his reply brief that the signature on the form is not his, but he failed to raise this factual contention in the district court, and thus cannot raise it here. *See Rodi Yachts, Inc. v. Nat'l Marine, Inc.*, 984 F.2d 880, 887 (7th Cir. 1993) ("Appellate courts review findings of fact made by trial courts; with immaterial exceptions they do not make their own findings . . . .").

Allen's consent under § 636(c) also resolves his related contention that the district judge should have intervened as the lawsuit progressed. In Allen's view, the trial should have been stayed until the district court ruled on his objections to the magistrate judge's orders granting summary judgment and denying leave to amend his complaint. But after consenting to proceed before the magistrate judge in lieu of the district judge, *see* 28 U.S.C. § 636(c), Allen could not ask the district judge to review his objections to the magistrate judge's rulings, *cf. id.* § 636(b)(1).

The same holds true with respect to Allen's submission alleging that the magistrate judge was biased. Allen cites no authority, and we have found none, suggesting that a district judge would review a complaint of judicial bias directed against a magistrate judge presiding under § 636(c). *Cf. Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989) (upholding magistrate judge's rejection of claim under 28 U.S.C. § 455 that he was biased)*.* It is conceivable, as the defendants note, that Allen's bias claim might also be construed as a motion under § 636(c)(4), a provision that allows a district judge to vacate a referral to the magistrate judge upon a showing of extraordinary circumstances. But § 636(c)(4) is rarely used, *see* 12 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3071.3 (2d ed. 1997), and, regardless, Allen's allegations of bias are unfounded, not extraordinary. He never explained what he meant when he said that the magistrate judge "accused" him of appearing before the judge previously, but a judge would not be disqualified from hearing a matter just because a litigant in the past had other business before the same judge. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1255-56 (7th Cir. 1993) (explaining that information judge gained about party from prior proceeding cannot be basis for disqualification). And Allen's contention that the magistrate judge exhibited bias by not ordering defense counsel to supply a copy of his deposition is meritless: judicial rulings alone almost never constitute a valid basis for disqualification. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

As his second ground for appeal, Allen argues that the magistrate judge should have enlisted counsel to assist him. The district court has the discretion to recruit a volunteer attorney for a pro se litigant in a civil case. 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). We review a denial of a motion for recruitment of counsel for abuse of discretion. *Pruitt*, 503 F.3d at 658. We ask whether the district court properly considered the following questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Id.* at 654.

The magistrate judge issued four orders addressing Allen's requests for counsel. In the first order, the magistrate judge noted that Allen had not demonstrated that he tried to retain counsel or that he was prevented from trying. The court also observed that Allen's claims were not particularly complex, and that Allen was competent to litigate them himself. This reasoning tracks the appropriate legal standard as later clarified in our en banc opinion in *Pruitt*. Allen has not persuaded us that he satisfied the threshold

requirement of trying to retain counsel himself, which was sufficient reason for the judge to deny all of Allen's requests for counsel. *See Jackson v. Kotter*, 541 F.3d 688, 700 (7th Cir. 2008). Additionally, the magistrate judge evaluated Allen's competence and reasonably concluded that Allen was capable of proceeding without counsel given his demonstrated ability to articulate his claims, apply the law, and file appropriate motions. We perceive no abuse of discretion.

We turn, then, to Allen's third appellate claim. He insists that the magistrate judge failed to recognize that his complaint included a fourth claim arising under the Eighth Amendment. After the magistrate judge had denied summary judgment for Todaro on Allen's retaliation claim, Allen informed the court that he also was accusing Todaro of sexually abusing him in 1999. But at the screening stage the district court did not perceive a fourth claim, and for the next year and a half Allen said nothing. Our own de novo review of Allen's complaint, *see Sanders v. Sheahan*, 198 F.3d 626, 626 (7th Cir. 1999), persuades us that the complaint includes no such claim. Allen's complaint alleges only sexual harassment consisting of words and gestures rather than any physical abuse. And while an allegation of sexual abuse of a prisoner would state a claim under the Eighth Amendment for cruel and unusual punishment, verbal harassment does not. *See Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest, or deny a prisoner equal protection of the laws."). In any event, any claim for abuse would certainly have been time-barred. In Illinois the statute of limitations for claims under § 1983 is two years. *See Farrell v. McDonough,* 966 F.2d 279, 280-82 (7th Cir. 1992). Allen filed this lawsuit in 2004, five years after the alleged sexual abuse in 1999. It is understandable, then, that Allen would have omitted his claim of sexual abuse.

Allen's fourth argument also concerns the complaint. He contends that the magistrate judge should have granted him leave to amend his complaint. We review the denial of leave to amend for abuse of discretion. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). After an answer has been filed, a plaintiff may amend the complaint only with the court's leave, which should be freely given when justice so requires. FED. R. CIV. P. 15(a). But leave to amend is inappropriate when the movant unduly delayed bringing the motion or when the amendment is futile. *Soltys*, 520 F.3d at 743.

Allen essentially sought to clarify that he was suing each defendant individually and not in any official capacity, and he wanted to change the apportionment of damages. As the court noted in its order, Allen filed this motion shortly before trial and over three years after bringing suit. More importantly, the proposed changes were unnecessary. It was already apparent that Allen was proceeding against the defendants in their individual

capacity, and the new damage amounts Allen proposed were well within the original amounts he sought.  The court did not abuse its discretion.  *See Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 850 (7th Cir. 2002) (explaining that amendment which proposes immaterial change is futile and properly denied); *see also Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007) (explaining that amendment which would not survive summary judgment is futile).

That brings us to the main thrust of Allen's appeal.  In his fifth claim of error, Allen contends that the magistrate judge should not have granted summary judgment for Wine, Kloth, Mitchell, and Scott.  We review a grant of summary judgment de novo.  *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 974 (7th Cir. 2004).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see Montano v. City of Chi.*, 535 F.3d 558, 568 (7th Cir. 2008).

As to Wine and Kloth, Allen claimed that they failed to intervene to prevent Todaro's retaliatory conduct.  To hold a person liable under § 1983, however, the plaintiff must prove that the defendant was personally involved in the deprivation of a constitutional right.  *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006).  And to be personally responsible for someone else's conduct, the defendant must have known about the conduct and either facilitated, endorsed, or deliberately ignored it.  *Id.*  The defendant must have had a "realistic opportunity" to prevent the conduct but then deliberately or recklessly disregarded the plaintiff's constitutional rights.  *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

Allen produced no evidence of personal involvement by Wine or Kloth.  Allen asserts that Todaro engaged in further misconduct after Allen informed Wine and Kloth of the prior harassment.  But as the magistrate judge observed, there is no evidence that Wine and Kloth were present during the later incidents, and thus no evidence that they realistically could have done anything to stop Todaro from writing disciplinary charges or otherwise harassing Allen.  In any event, Wine and Kloth could not be liable for Todaro's conduct unless Todaro violated Allen's constitutional rights, *see Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004), and here, the jury found that Todaro was not liable for the underlying retaliatory conduct.

With respect to Mitchell and Scott, Allen claimed that they violated his right to due process by refusing to call his witnesses during the disciplinary hearing over which they presided.  But to establish a due process claim under § 1983, a plaintiff must first establish

that he was deprived of a constitutionally protected interest in life, liberty, or property. *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). Only after the plaintiff has established a protectible interest by showing that he suffered an atypical and significant hardship will the court consider what process was due. *Id.* at 607-08.

In this case Allen was placed in disciplinary segregation for two months and during that time lost commissary privileges and was assigned a lower grade status. However, he did not suffer an atypical and significant hardship by losing commissary privileges or being assigned a lower grade status. *See Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997). Nor did he suffer such hardship solely by being confined to disciplinary segregation for the brief period at issue in this case. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Lekas*, 405 F.3d at 608-10; *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005).

Finally, in his sixth and last argument, Allen contends that he was denied a fair trial on his retaliation claim against Todaro. Allen contends that the magistrate judge failed to call two of his witnesses, allowed several of his witnesses to testify via video while wearing prison clothing and restraints, and failed to give a jury instruction on compensatory damages.

We do not have the trial transcript. The litigants have the burden of ordering any necessary transcripts and making arrangements to pay for them under FED. R. APP. P. 10(b). A party who fails to do so waives any argument that cannot be meaningfully reviewed without the transcript. *Piggie v. Cotton*, 342 F.3d 660, 663 (7th Cir. 2003); *Woods v. Thieret*, 5 F.3d 244, 245 (7th Cir. 1993). Our ability to evaluate Allen's contentions about the trial is thus limited, but to the extent that we can follow his contentions without a transcript, we perceive no error.

We review for abuse of discretion the manner in which a trial judge conducts the proceedings. *Estate of Moreland v. Dieter*, 395 F.3d 747, 753-54 (7th Cir. 2005); *Testa v. Vill. of Mundelein*, 89 F.3d 443, 445 (7th Cir. 1996). Allen argues that the magistrate judge offered no explanation for his refusal to call two of Allen's trial witnesses. But neither Allen's brief nor the record on appeal demonstrates that he objected at trial to the exclusion of these witnesses, and it is well settled that objections not raised in the district court are waived on appeal. *Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002). Moreover, although Allen insists in his brief that the testimony of these witnesses was "vital" and would not have duplicated other testimony, he has failed to disclose what the missing witnesses would have said. Thus, we cannot conclude that the magistrate judge abused his discretion by excluding these witnesses upon learning that technical difficulties prevented them from

testifying that day. *See Pinkston v. Madry*, 440 F.3d 879, 890 n.15 (7th Cir. 2005) (explaining that trial judge may preclude cumulative or repetitive testimony); *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1260 (7th Cir. 1995) (explaining that party complaining on appeal about exclusion of witness must disclose substance of omitted testimony and demonstrate that exclusion affected a substantial right).

Neither can we agree with Allen that the magistrate judge erred by permitting his inmate-witnesses to testify via video-conference while wearing prison clothing and restraints. We note as an initial matter that Allen has not demonstrated that his witnesses did wear prison clothing and restraints or that the jury was able to see them. *See Fountain v. United States*, 211 F.3d 429, 434-35 (7th Cir. 2000) (defendant's failure to identify evidence that he was shackled in the presence of the jury precluded his ineffective assistance of counsel claim based on counsel's failure to object to that shackling). But, even so, when an inmate is suing prison guards, there is nothing prejudicial about allowing other prisoners to appear in prison clothing and restraints because the jury already knows that the plaintiff and the witnesses are inmates. *Woods*, 5 F.3d at 249; *Holloway v. Alexander*, 957 F.2d 529, 530 (8th Cir. 1992); *see also Fountain*, 211 F.3d at 435-36 (concluding that defendant charged with murdering guard could not have been prejudiced by appearing before jury in shackles because jury already knew he was a prison inmate at the time of the alleged crime). Moreover, a witness may testify via video "[f]or good cause in compelling circumstances and with appropriate safeguards." FED. R. CIV. P. 43(a). The use of this technology is permissible as a matter of discretion. *See Thornton v. Snyder*, 428 F.3d 690, 697-99 (7th Cir. 2005) (finding no due process violation where the inmate-plaintiff had to attend his civil trial via video-conference). In *Thornton*, we upheld a district court's decision to allow inmates to testify via video-conference in part because the inmates were "scattered all over the state." *Id.* at 698. As we recently iterated, transporting inmates to court is costly and potentially dangerous. *Barnes v. Black*, No. 08-1703, 2008 WL 4206794, at *2 (7th Cir. Sept. 12, 2008). The record here does not disclose the magistrate judge's rationale for having the inmate-witnesses testify by video-conference, but neither is there any indication that Allen objected to the procedure. The record does show that the jury was instructed to give video testimony and in-person testimony equal consideration. Allen does not offer any specific reason why the video-conference arrangement was inadequate or prejudicial, and thus he has not shown that the magistrate judge abused his discretion.

That leaves only Allen's contention that the magistrate judge should have given an instruction on compensatory damages. We review jury instructions de novo, and reverse only if an error prejudiced the party. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). In order to recover compensatory damages, however, a prisoner claiming that he suffered

retaliation at the hands of a prison guard must prove, in light of 42 U.S.C. § 1997e(e), that he suffered physical injury. *See Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003). Thus, as the magistrate judge recognized, because of the absence of proof of a physical injury, compensatory damages would not have been available on Allen's retaliation claim. The failure to give a compensatory damage instruction was not an error.

Accordingly, the judgment is AFFIRMED.